Ethel KRAVITZ, Appellant,

v.

COMMONWEALTH OF PENNSYLVA-
NIA et al., Appellees.

UNITED STATES of America ex rel.
KRAVITZ, Ethel, Appellant,

v.

COMMONWEALTH OF PENNSYLVA-
NIA et al., Appellees.*

Nos. 76–1390, 76–1599.

United States Court of Appeals,
Third Circuit.

Argued Oct. 19, 1976.

Decided Feb. 23, 1977.

Harold Cramer, Mesirov, Gelman, Jaffe
and Cramer, Philadelphia, Pa., for appellant
in Nos. 76–1390, 76–1599; Ralph S. Sprit-
zer, Professor of Law, University of Penn-
sylvania Law School, Philadelphia, Pa., of
counsel.

Maria Parisi Vickers, Asst. Atty. Gen.,
Michael von Moschzisker, Deputy Atty.
Gen., Eastern Regional Director, Robert P.

---

*Editor's Note: The decision of the United
States Court of Appeals, Fourth Circuit, in
Simmons v. Schlesinger, published in the
advance sheets at this citation (546 F.2d 1100)
was withdrawn from the bound volume at the
request of the court.

Kane, Atty. Gen., Philadelphia, Pa., for appellees in No. 76–1390.

No appearance for appellees in No. 76–1599.

Before ALDISERT and GIBBONS, Circuit Judges, and MEANOR,* District Judge.

### OPINION OF THE COURT

MEANOR, District Judge.

Ethel Kravitz, petitioner and plaintiff below and twice appellant here, was convicted in 1959 of the second degree murder of her husband. *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960), cert. den. 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961). Following that affirmance of her conviction, appellant petitioned the United States District Court for the Middle District of Pennsylvania for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. That court denied her petition and the denial was affirmed by this court. *In the Matter of Ethel Kravitz*, 358 F.2d 734 (3d Cir. 1966).[1] In affirming, this court noted that all the contentions but one were devoid of merit. That issue involved the claim that incriminating statements had been admitted at the trial which had been procured from petitioner by police interrogation after focus upon her as the probable killer without being preceded by the advice that she had the right to remain silent or to have counsel present. With respect to this question, this court affirmed the denial of the petition because of a failure to exhaust state remedies. As to all other issues, the district court's denial was affirmed on the merits.

Thereafter, Mrs. Kravitz returned to the Pennsylvania courts. By this time, she was on parole. It was held, inter alia, that her failure to raise previously her contention that her conviction was invalid because of the admission of inculpatory statements precluded further litigation. *Common-*

*wealth v. Kravitz*, 441 Pa. 79, 269 A.2d 912 (1970).

Petitioner then returned to the federal court, this time in the Eastern District of Pennsylvania, and filed two actions. By this time, she had been released from parole. On September 23, 1975, she filed a complaint against the Commonwealth of Pennsylvania and its Governor and Attorney General seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that her conviction was "null and void." Jurisdiction was sought to be predicated on 28 U.S.C. § 1331(a) and § 1343(3) and (4) with the claim arising under 42 U.S.C. § 1983. This action was dismissed without opinion.

On the day following the filing of the complaint described above, Mrs. Kravitz filed her second petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254, naming the Governor, the Attorney General and the Commonwealth as respondents. The district court, adopting a magistrate's report, held that since Mrs. Kravitz, at the time of filing her petition, had been discharged from parole, she was no longer in custody and denied the petition. She now appeals from both adverse judgments. We shall first discuss the denial of her second petition for habeas corpus.

### I

28 U.S.C. § 2241 provides in pertinent part:

   \*    \*    \*    \*    \*    \*

(c) The writ of habeas corpus shall not extend to a prisoner unless—

   \*    \*    \*    \*    \*    \*

(3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2254(a) provides:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of

---

* H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

1. There was intervening Pennsylvania litigation as a result of which Mrs. Kravitz was denied any share of her husband's estate. *In re Kravitz' Estate*, 418 Pa. 319, 211 A.2d 443 (1965).

habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

The requirement that the petitioner be in custody before the writ will lie has been given a broad construction providing the federal writ with an expansive reach. Besides those in actual confinement, the custody prerequisite has been held to encompass those on probation, *United States ex rel. Wojtycha v. Hopkins,* 517 F.2d 420 (3d Cir. 1975); *United States ex rel. De Rosa v. Superior Court,* 379 F.Supp. 957 (D.N.J. 1974); on parole, *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) and those on bail, *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). As a reading of these cases will show, their extensions of the writ are premised upon the restraints of liberty inherent in the usual conditional release of probation, parole and bail.

The custody prerequisite to the issuance of the federal writ has never been held satisfied by one who, like this petitioner, at the time of filing the petition for the writ, has been unconditionally released. *Noll v. Nebraska,* 537 F.2d 967 (8th Cir. 1976); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1077 (1970). The same result obtains under 28 U.S.C. § 2255. That statute, which in effect provide habeas relief for those convicted of federal crimes,[2] also precludes relief except for one "in custody." In both *United States v. Bradford,* 194 F.2d 197 (2d Cir.), cert. denied 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371 (1952) and *United States v. Lavelle,* 194 F.2d 202 (2d Cir. 1952), applicants had been unconditionally released from service of the federal sentences they sought to attack under § 2255. In both cases, the Second Circuit held that the district court was without jurisdiction to entertain the applications since, at the time they were filed, the petitioners were no longer "in custody." Obviously, this construction of the custody requirement is equally applicable to § 2254.[3] It is plain that the petition before us, having been filed at a time when petitioner had been unconditionally released from custody, was without the jurisdiction of the district court.

■ The thought has been advanced that Mrs. Kravitz' prior petition, dismissed in part on the merits and in part for lack of exhaustion of state remedies, relieves her of meeting the present custody requirement at the time of filing the petition under review. This is premised on the lack of mootness of her claim. We agree that her claim is not moot, for she alleges sufficient collateral consequences flowing from her conviction to foreclose that issue.[4] But our statutes conferring habeas jurisdiction do not confer power to entertain claims on the ground that they are not moot. They authorize jurisdiction only where the petitioner is "in custody." Whatever may be the scope of a district court's power to retain jurisdiction in a habeas matter pending further state proceedings,[5] no attempt to exercise reten-

**2.** *United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

**3.** This court has recognized that one unconditionally released from federal custody may not thereafter initiate an attack upon his federal sentence under § 2255. *United States ex rel. Bogish v. Tees,* 211 F.2d 69, 71 (3d Cir. 1954).
We have also held that the custody requirements of § 2241 and § 2255 are the same. *United States ex rel. Wojtycha v. Hopkins, supra,* 517 F.2d at 424; *United States v. Washington,* 341 F.2d 277, 280 (3d Cir.), cert. denied 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89 (1965).

**4.** *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). In *Carafas,* the petitioner filed while in custody, but was unconditionally released following a court of appeals decision and before certiorari was sought. It was held that once federal habeas jurisdiction attached, unconditional release did not require a determination of mootness since there were sufficient collateral consequences to perpetuate a controversy.

**5.** 28 U.S.C. § 2343 (1970) empowers the court to "dispose of the matter as law and justice require." This court recently ordered a district court to retain jurisdiction of a state prisoner habeas petition, pending an identification hearing in the state courts, after a finding that the constitutional right to such a hearing out of the

tion of jurisdiction was made in connection with the first petition and such retention was not sought.[6] We hold that this petitioner's second petition was subject to the requirement of existing custody at the time of its filing—a prerequisite that she has not met. Hence, the judgment dismissing the petition is affirmed.[7]

## II

■ We also affirm the dismissal of the complaint predicated upon 42 U.S.C. § 1983. The Commonwealth of Pennsylvania is immune from suit under the Eleventh Amendment. *Myer v. New Jersey,* 460 F.2d 1252 (3d Cir. 1972). The Governor and Attorney General named in the complaint were not in office when the alleged unconstitutional conduct occurred and it is not averred that they personally had anything to do with it. Under these circumstances, no claim for relief is stated against them. *Carter v. Chief of Police,* 437 F.2d 413 (3d Cir. 1971).

The judgments under review are affirmed.

## GIBBONS, Circuit Judge, dissenting.

These appeals involve the judgment preclusion effect of a judgment, in a state criminal proceeding, alleged to be void because obtained in violation of the federal constitution. Since the cases are before us on the pleadings, we must accept as true the allegation that the criminal judgment under attack was procured by use of a statement obtained in violation of the fifth amendment privilege against self incrimination. In both appeals the majority has, I believe, misstated the governing law and in the habeas corpus case has reached an erroneous result.

## I. THE HABEAS CORPUS CASE, NO. 76-1599

Judge Meanor has outlined the prior efforts of petitioner Kravitz to obtain habeas corpus relief. In our prior decision, *In re Ethel Kravitz,* 358 F.2d 734, 735 (3d Cir. 1966) (per curiam), we affirmed the denial of habeas corpus relief with respect to the fifth amendment claim solely because that ground had not been urged before an appropriate state court. 28 U.S.C. § 2254(b). But there is no doubt that the federal court then had jurisdiction to determine the validity of the state court judgment. Petitioner was in custody when the writ was sought. In *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) the Court held that once federal habeas corpus jurisdiction has attached, it is not defeated by the release of the prisoner prior to a determination of the merits of petitioner's claim. That holding, said the Court, reflects the requirement of the statute "that the applicant must be 'in custody' when the application for habeas corpus is filed." 391 U.S. at 238, 88 S.Ct. at 1560. The question, then, is whether having jurisdiction over the respondent custodian the federal court either lacked or lost jurisdiction over the subject matter of the fifth amendment claim.

The only basis for a holding that the federal court lacked jurisdiction over the subject matter of the fifth amendment claim would be a construction of § 2254(b) as a subject matter jurisdictional bar. Such a construction of the exhaustion provision, however, is precluded by the caselaw. In *Fay v. Noia,* 372 U.S. 391, 418, 83 S.Ct. 822,

---

presence of the jury had been denied. *United States ex rel. Fisher v. Driber,* 546 F.2d 18 (3d Cir. 1976).

**6.** It does not appear that, with respect to the initial petition, it was urged that exhaustion was inapplicable since further state remedies were procedurally foreclosed. *See Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Our decision is not affected by the proposition that, in retrospect, the exhaustion

ruling may have been inaccurate. We deal with power to entertain a petition for the writ, and such a petition may not be lodged unless the custody requirement is satisfied at the time of filing.

**7.** We see no need to discuss under what circumstances, if at all, a district court may retain jurisdiction of a habeas petition pending exhaustion of available state remedies.

838, 9 L.Ed.2d 837 (1963) the Court made clear that the exhaustion qualification

" . . . plainly stemmed from considerations of comity rather than power, and envisaged only the postponement, not the relinquishment, of federal habeas corpus jurisdiction, which had attached by reason of the allegedly unconstitutional detention and could not be ousted by what the state court might decide."

This Court has frequently recognized that the exhaustion requirement is a matter only of voluntary abstention, not of subject matter jurisdiction over the non-exhausted claim. A leading case is Judge Freedman's opinion in *United States ex rel. Gockley v. Myers,* 411 F.2d 216 (3d Cir. 1969). The non-jurisdictional nature of the exhaustion requirement was recognized as recently as *Moore v. DeYoung,* 515 F.2d 437, 443 (3d Cir. 1975). Clearly, then, the federal court obtained subject matter jurisdiction over the petitioner's fifth amendment claim, and *Carafas v. LaVallee, supra,* holds that nothing which the state authorities did thereafter could affect that jurisdiction.

Having subject matter jurisdiction, the federal habeas corpus court certainly had the power to enter an order retaining jurisdiction pending completion of an appropriate state court proceeding. Indeed that practice is common, and this court has more than once directed it. *E. g., United States ex rel. Fisher v. Driber,* 546 F.2d 18 (3d Cir. 1976); *United States ex rel. Johnson v. Cavell,* 468 F.2d 304, 308–9 (3d Cir. 1972) (in banc). If such an express order had been entered and the state court had decided the claim adversely to petitioner, it would certainly have been reconsidered by the federal habeas corpus court. And, under *Carafas v. LaVallee, supra,* the fact that state custody of petitioner had ended would not mandate a different result. Moreover, even in the absence of such an express order, if some vestigial remnant of custody remained as a consequence of the state judgment there would be no question about the subject matter jurisdiction of the habeas cor-

pus court over the fifth amendment claim. *See Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (bail); *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (parole); cf. *Nelson v. George,* 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970) (detainer).

The narrow question, then, is whether the mere absence of magic formulary words in the prior order of this court should give state authorities the power to preclude federal courts from hearing constitutional claims, simply by delaying decision until custody ended, where the remanding federal habeas corpus court plainly had jurisdiction. How much should turn, in other words, on use of a clause such as "the petition is dismissed for want of exhaustion," instead of words such as "the petition is denied for want of exhaustion and the court will retain jurisdiction until the state court considers the claim." The sort of pleading rule appropriate for these circumstances can be chosen by this court for the federal courts in this Circuit. Certainly we have the power to decide what effect our own orders were intended to have. And although the majority opinion does not analyze the issue presented in terms of such a choice, a choice has been made. Putting the rabbit in the hat by relating the "custody" discussion to the second habeas corpus petition rather than to the first does not conceal the majority holding that the original dismissal ended the federal court's subject matter jurisdiction over the fifth amendment claim. The holding is one of first impression, and it is wrong.

Fed.R.Civ.P. 60 applies to habeas corpus proceedings. *See, e. g., Naples v. Marwell,* 368 F.2d 219 (6th Cir. 1966) cert. denied, 386 U.S. 971, 87 S.Ct. 1165, 18 L.Ed.2d 131 (1967); cf. *Pitchess v. Davis,* 421 U.S. 482, 489, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975). Let us assume hypothetically that instead of filing what she denominated a second petition for habeas corpus, the petitioner had instead made a motion pursuant to Rule 60(a) to modify a clerical mistake in

the order dismissing the original petition so as to add the formulary words "retention of jurisdiction." If the district court granted such a motion we would concede, I suggest, that it could consider petitioner's fifth amendment claim. Even if the district court did not regard the omission of the formulary words as "arising from oversight or omission," it could still entertain an application for similar relief under Rule 60(b)(6). In the circumstances of this case, where petitioner had no reason to anticipate that the state court consideration of the fifth amendment would be so long postponed or that she would be released from all supervision before she could return to the federal court, and where no possible prejudice could result to the respondent other than finally getting to the merits of the claim, it would be an abuse of discretion to deny such a motion. Indeed since a Rule 60(a) motion can be made at any time and a Rule 60(b)(6) motion can be made within a reasonable time, both avenues would still appear to be open.

I would not invite a Rule 60 motion and a third appeal. Instead I would hold that when a federal court is tendered a constitutional issue in a 28 U.S.C. § 2254 proceeding, thus obtaining subject matter jurisdiction, but denies habeas corpus relief solely on the ground that state remedies have not been exhausted, custody for purposes of the rule of *Carafas v. LaVallee* is determined as of the time of the original petition, regardless of the clerical form of the order denying habeas corpus relief. The substance of the disposition was only a postponement of federal review, and our pleading rules should conform to the substance, not degenerate into formalism. Looking at substance rather than form the second petition for habeas corpus in this case is nothing more than a continuation of the originally postponed proceeding.

In this case of first impression the clear and simple rule which I urge is far more consistent with the purposes and the realities of habeas corpus litigation. Most cases that are dismissed for failure to exhaust state court remedies have been filed by pro se petitioners. It makes no sense to put the burden on such petitioners to take steps in the original federal proceeding which will result in a retention of jurisdiction that will guard against the federal court's loss of power to grant relief because of a subsequent release from custody. Few petitioners, if any, will ever be aware of that burden. Moreover even those aware of it will rarely have the opportunity to do anything about it, since in the vast majority of habeas corpus cases the court prepares the form of judgment, and petitioner never sees it until after it is entered. The Rule 60 route is open, but what is needed is pleading simplicity rather than complexity and duplication.

Of course it may be argued that no good purpose is served by affording habeas corpus relief for disabilities other than custody. That is not my view, but in any event we are foreclosed from such considerations by the Court's decision in *Carafas v. LaVallee, supra*. We should conform the rule with respect to continued subject matter jurisdiction over non-exhausted claims to the spirit of that decision. The majority concedes that petitioner suffers from disabilities other than confinement and that the case has not become moot. The district court erred in dismissing the petition, and the order appealed from should be reversed.

## II. THE DECLARATORY JUDGMENT ACTION, NO. 76–1390

While I agree that the complaint for declaratory relief was properly dismissed, I cannot join in the majority's brief discussion of the reasons for that dismissal.

Kravitz sues the Commonwealth, the Governor, and the Attorney General, for a declaratory judgment that her murder conviction is null and void because of constitutional violations. She alleges jurisdiction not only under 28 U.S.C. § 1343(3), but also under § 1331. She alleges that she suffers adverse collateral consequences of the void

judgment.[1] The relief sought is a declaratory judgment that the conviction is, as she alleges, null and void.

The majority affirms the dismissal because "[t]he Governor and Attorney General named in the complaint were not in office when the allegedly unconstitutional conduct occurred and it is not averred that they personally had anything to do with it." Maj. Opinion at 1103. That is entirely beside the point, for what plaintiff seeks is relief from the present consequences of the allegedly void judgment. If the present incumbents of a public or private office are giving ongoing effect to a judgment which resulted from the wrongdoing of others, or are in a position by virtue of their office to give relief from those effects, the fact that they did not participate in the initial wrong does not relieve them of their present responsibilities. They are not being asked to respond in damages for the wrongdoing of others, but only to relieve the plaintiff of the ongoing effects of a void judgment.

The appellees assert that no civil action other than habeas corpus is available for collateral attack upon a criminal judgment. But the judge-made rule of res judicata is not so absolute. In an appropriate civil action against an appropriate defendant who is in a position to afford relief, a void judgment can be collaterally attacked. *Virginia Dare Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976). The *Neely* case is a civil action brought under the Tucker Act.

28 U.S.C. § 1346. But the rules of res judicata are no different in actions for declaratory judgments, or for other civil remedies available by virtue of 42 U.S.C. § 1983 or the Federal Rules of Civil Procedure. The difficulty is not that one cannot collaterally attack a void judgment in a civil action, but that the complaint in this case does not disclose what relief is available from the named defendants with respect to the adverse consequences complained of.

Kravitz complains, for example, that because of the Pennsylvania Slayer's Act, 20 P.S. § 8801 *et seq.*, formerly 20 P.S. § 3441 *et seq.*, she is being deprived of participation in her husband's estate. But the complaint refers to a judicial decision, *In re Kravitz' Estate*, 418 Pa. 319, 211 A.2d 443 (1965), adjudicating such disability. Nothing that either the Governor or Attorney General can do will relieve her of that judgment. She also complains that she is being deprived of the opportunity to serve as a juror in New York. If this were a suit against the jury commissioner she might be entitled to insist on adjudicating her collateral attack on the conviction. She alleges that the conviction is harming her reputation and causing loss of employment opportunities. But she does not charge that either the Governor or the Attorney General is in charge of maintaining the record of that conviction. If these officers could expunge the record of conviction, a suit against them might be appropriate. The only role assigned to them by the complaint is as defendants in a declaratory judgment

---

1. In her complaint, appellant alleged that:

   5. As a direct result of plaintiff's conviction of the crime of murder in the second degree and solely as a consequence of said conviction, she is unable to share in her husband's estate, the amount of which is substantially in excess of $10,000. See: *Kravitz Estate*, 418 Pa. 319, 211 A.2d 443 (1965).

   6. As a direct result of the plaintiff's conviction of the crime of murder in the second degree she is barred from serving as a juror in the State of New York, her current place of residence. See: N.Y.Judiciary Law § 506 (McKinney 1968).

   7. As a direct result of plaintiff's conviction of the crime of murder in the second degree, her opportunities to earn a livelihood are curtailed because of restrictive employment practices requiring disclosure of criminal convictions and discrimination against those convicted of crime.

   8. As a direct result of plaintiff's conviction of the crime of murder in the second degree, her reputation and standing in the community have been destroyed.

   9. As a direct result of plaintiff's conviction of the crime of murder in the second degree, civil and constitutional rights she would otherwise enjoy are denied to her.

action. Since the complaint does not allege any other relief they could afford her, and they have no interest in the ongoing effects of the conviction, it was properly dismissed.